RASLO REALTY Co., INC., Landlord, *v.* LOUIS K. SCHWARTZ, Tenant, and SALRO HOLDING Co., INC., and Another, Undertenants.

Municipal Court of New York, Borough of Manhattan, Fifth District, December 31, 1936.

*Martin H. Young*, for the landlord.

*Pollock & Nemerov* [*Henry W. Pollock* and *Maurice J. Dix*, of counsel], for the tenant, Schwartz.

GENUNG, J. The landlord seeks a final order in this summary proceeding claiming that rent in the amount of $10,000 is unpaid.

In 1917 the Seventy-Seventh Street Realty Corporation leased to the tenant herein, Schwartz, the premises in question. Schwartz in October, 1917, sublet the same to the Wellsmore Garage, Inc., which corporation in February, 1919, assigned the sublease to the Studebaker Corporation of America. As a condition for the tenant's consent to such assignment, the Studebaker Corporation guaranteed the performance of the lease.

On July 25, 1924, the undertenant herein, Salro Holding Co., Inc., was formed by Messrs. Geiger, Salzberg and Rosenberg, who, on July 30, 1924, also incorporated the landlord corporation, the Raslo Realty Co., Inc. Thereupon, by deed dated August 12, 1924, the landlord herein purchased the fee of said premises from the Seventy-Seventh Street Realty Corporation subject to the tenant's lease (as modified by agreement dated January 6, 1919). At about the same time (as of August 14, 1924) the Salro Company (the under-tenant herein) purchased the sublease from the Studebaker Corporation and assumed the obligations thereof.

Simultaneously, both the Raslo Company and the Salro Company executed a purchase-money mortgage to the Seventy-Seventh Street Realty Corporation in the sum of $100,000 and covenanted therein that the Salro lease would not, during the terms of the mortgage, be merged in the fee.

At that time, then, Messrs. Geiger, Salzberg and Rosenberg (through their corporation, Raslo Realty Co., Inc.) was the tenant's landlord and through their corporation, Salro Holding Co., Inc., was the tenant's undertenant. On the same day the Salro Company leased the premises to Steinhall Garage, Inc., at a net rental of $45,000 a year. Again on the same day the landlord herein agreed with the Steinhall Garage, Inc., that if Schwartz defaulted on his lease, the landlord would recognize the Steinhall lease and further, to induce the Steinhall Company to deposit $25,000 security

with the Salro Company, agreed to be jointly and severally liable for the return of the security and gave the Steinhall Company a lien on the fee for the amount of the security so deposited. The Steinhall Company surrendered its lease in June, 1926, and in the same month the Salro Holding Co., Inc., leased the premises to one Taub who assigned the same to Belleclaire Garage, Inc., which latter corporation then assigned such lease to B. Miller Service Co., Inc., in May, 1928, when the landlord herein, the Raslo Realty Co., Inc., agreed to recognize the Miller Company as tenant in the event of a default by the Salro Company. That lease was surrendered in November, 1932, to the Salro Company (undertenant herein).

Messrs. Rosenberg, Salzberg and Geiger each owns one-third of the stock of the landlord corporation (Raslo) and the landlord corporation is the sole stockholder of the undertenant (Salro); and the same group are the officers and directors of both companies and they executed instruments interchangeably for both corporations and the same firm of accountants handled both accounts.

Up to the end of 1932, Schwartz remitted to his landlord and received payments from his tenant. In December, 1932, in response to Schwartz's request for a check for the rent, he received a communication from the accountants that " In the future all payments will be made of the difference in rental since we are operating the garage and have insufficient cash available to pay in full." Thereafter the undertenant merely paid to Schwartz the difference between the rent reserved in the main lease and in the sublease and the landlord credited on its books the rent due from Schwartz.

Then the subtenant desired a reduction of rent because their operation of the garage resulted in a loss. In April, 1934, the accountants wrote Schwartz that they represented " the companies operating " the garage; that the garage was being operated at a loss; that " the owners of the property " will no longer carry on unless Schwartz eliminates the rent differential and they inclosed an operating statement with the legend " Raslo Realty Co., Inc., and Salro Holding Co., Inc. (Operating Belleclaire Garage)." In that statement appears as expenses the interest on mortgages, real estate taxes and " Excess rent paid to E. R. Schwartz." The landlord agreed to reduce the tenant's rent in consideration of the tenant reducing the rent payable by the subtenant and the landlord further guaranteed the payments of the reduced rental by the subtenant for the period ending September 30, 1935.

From and after October 1, 1935, the subtenant sent checks at the reduced rate to the tenant who refused to accept them and during all that period the tenant never received a rent bill from the land-

lord. The landlord's books of account were kept by a firm of auditors who were also the auditors for the subtenant. The landlord's records show a credit to the tenant each month for the amount of rent reserved in the sublease, that the subtenant gave its checks directly to the landlord and that the subtenant, by its own checks, paid the interest and installments on the mortgage, and the real estate taxes.

Now the landlord claims that it has received no rent for the entire year from December 1, 1935, amounting to $10,000. The tenant claims that the rent has been paid to the landlord so far as he is concerned, by reason of the arrangement made that the subtenant was to pay him only the difference between the rents reserved in the two leases.

It is significant that although the same men are officers and directors of both landlord and subtenant and executed instruments interchangeably for both corporations, no one of them testified upon the trial.

Palpably this proceeding was brought because of Schwartz's refusal to continue the rent reduction.

It appears, therefore, that for an entire year the landlord permitted Schwartz to believe that the previous arrangement for payment of only the difference continued in effect and thus lulled him into a sense of security.

"A corporation is a creature of law, endowed with a personality separate and distinct from the personality of those who own its stock and elect its directors." (*Rapid T. Subway Constr. Co.* v. *City of N. Y.*, 259 N. Y. 472, 487.) Here the landlord corporation is the sole stockholder of the subtenant; both had the same officers and directors who executed instruments interchangeably for both corporations; the financial records of both were supervised by the same auditors; the premises in question were being operated by both companies; the request for a reduction of rent to the subtenant was predicated upon the financial difficulties of the landlord corporation; both companies joined in the execution of the purchase-money mortgage given upon acquiring the property and the money of the subtenant was regularly used to pay the obligations of the landlord corporation. Here then we have a case where the stockholder is not merely using its control in the normal and usual manner.

" Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent. Where control is less than this, we are remitted to the tests of honesty and justice " (*Berkey* v. *Third Ave. Ry. Co.*, 244 N. Y. 84), and " honesty and justice " do not permit

the landlord herein to seek " exemption from the consequences of its own acts working injustice upon parties with which it deals." (*Rapid Transit Subway Constr. Co.* v. *City of N. Y., supra,* 491.)

The arrangement for the offset was not an attempt to vary the terms of the lease but merely provided for a method of payment. (*379 Madison Ave., Inc.,* v. *Stuyvesant Co.,* 143 Misc. 690.)

Final order is accordingly directed for the tenant.